JOURNAL ENTRY AND OPINION
{¶ 1} On May 24, 2006, a Cuyahoga County Grand Jury indicted defendant-appellant Roy Williams ("Williams") on one count of aggravated burglary, one count of kidnapping, and one count of aggravated theft, each with one-and three-year firearm specifications. *Page 3 
 {¶ 2} On August 16, 2006, the case proceeded to a joint jury trial in which his brother, Jermaine Williams, was tried as a codefendant. On August 22, 2006, the jury found Williams not guilty of aggravated burglary, guilty of kidnapping with one-and three-year firearm specifications, and guilty of misdemeanor theft with one-and three-year firearm specifications.
 {¶ 3} On September 21, 2006, the trial court sentenced Williams to six years of imprisonment. The trial court merged all firearm specification convictions and sentenced Williams to three years of imprisonment, to be served prior and consecutive to the remaining sentence. The trial court thereafter sentenced Williams to three years of imprisonment for kidnapping and six months of imprisonment for misdemeanor theft, with the theft sentence to run concurrent to Williams' three-year sentence for kidnapping.
 {¶ 4} The events giving rise to the case sub judice occurred on March 31, 2006, in which Williams and his brother, Jermaine Williams ("Jermaine"), brandishing guns, entered the residence of Jeffrey Duke ("Duke"), Jesse Leffew ("Leffew"), and Steve Leffew ("Steve"), located at 6346 Meadowbrook Road, Garfield Heights, Ohio. Only Duke and Leffew were present on March 31, 2006. Williams and Jermaine bound Duke and Leffew with extension cords and dog leashes. Williams and Jermaine then removed $750 from Duke's safe, located on the second floor, and also took Duke's X-Box video game player, twenty-three X-Box video games, and his cellular phone before leaving. Leffew was able to free himself *Page 4 
and ran next door to his neighbor and friend John Kornet ("Kornet") for help. Kornet and Leffew returned to 6346 Meadowbrook Road, freed Duke from the cords and leashes and contacted the police.
 {¶ 5} Two days later, officers identified the brothers at a bus stop in Euclid, Ohio and approached them. Williams admitted to possessing a firearm during a pat-down and was arrested. Jermaine fled the scene and was apprehended shortly thereafter. Police believed the firearm to be the one used on March 31, 2006, against Duke and Leffew.
 {¶ 6} Williams timely appeals, raising three assignments of error for our review.
 ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."
 {¶ 7} Williams cites contradictory testimony and argues that in light thereof, the trial court erred in denying his motion for acquittal. We disagree.
 {¶ 8} Crim.R. 29(A), which governs motions for acquittal, states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 9} Furthermore, in reviewing the sufficiency of the evidence, this court held: *Page 5 
 "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The motion `should be granted only where reasonable minds could not fail to find reasonable doubt.'" State v. McDuffie, Cuyahoga App. No. 88662, 2007-Ohio-3421. (Internal citations omitted.)
 {¶ 10} R.C. 2905.01 delineates the crime of kidnapping as charged:
 "No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 * * *
 (2) To facilitate the commission of any felony or flight thereafter."
 {¶ 11} We find that in reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of kidnapping proven beyond a reasonable doubt.
 {¶ 12} Williams argues that there is no evidence that he kidnapped Duke. In support of his contention, Williams argues that Leffew was involved in the setup, there is no evidence that a gun was used, and the witnesses lack credibility.
 {¶ 13} However, a review of the entire record reveals that Duke identified Williams as the perpetrator and testified to the following: On March 31, 2006, Williams wore a black coat with white stitching, Williams held a small chrome *Page 6 
handgun to Duke's head, Williams participated in restraining Duke with dog leashes and proceeded to the second floor with Jermaine where the safe was located, and Williams and Jermaine took $750 and his cellular phone. Additionally, when Euclid police arrested Williams, they confiscated a small black firearm that Jermaine may have used against Duke on March 31, 2006.
 {¶ 14} Thus, there is ample evidence that Williams and Jermaine used guns. Whether Leffew participated in the setup is inapposite to our sufficiency analysis. We find that the essential elements of kidnapping are proven beyond a reasonable doubt, and the trial court did not err in denying his motion for acquittal as to the kidnapping charge.
 {¶ 15} R.C. 2913.02 sets forth the elements of theft as charged in the indictment:
 "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."
 {¶ 16} In reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential elements of theft proven beyond a reasonable doubt.
 {¶ 17} Duke testified that after Williams and Jermaine bound him with dog leashes, they took the key to his safe out of his pocket and proceeded to the second floor to his safe. Although Duke did not see Williams and Jermaine remove items *Page 7 
from the safe or from Duke's room because he was restrained, he later discovered $750 was missing from his safe, and his X-Box and twenty-three X-Box games were missing from his bedroom. Duke also saw Williams and Jermaine take his cellular phone before leaving. Duke did not give his consent to Williams or Jermaine to exert control over his property. Therefore, we find that the trial court did not err in denying Williams' motion for acquittal as to the theft charge.
 {¶ 18} R.C. 2911.11 defines aggravated burglary as follows:
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 19} In this case, the trial court did not err in denying Williams' motion for acquittal because there exists sufficient evidence to find the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 20} In viewing the evidence in a light most favorable to the prosecution, we find that although Williams and Jermaine may have been acquainted with Jesse Leffew, they entered Duke and Leffew's home brandishing firearms. Williams and Jermaine left Duke and Leffew tied with leashes and cords and left with $750, an X-Box, twenty-three X-Box games, and a cellular phone. Although the jury found Williams not guilty of aggravated burglary, there existed sufficient evidence to *Page 8 
sustain convictions for kidnapping and theft.
 {¶ 21} As such, any rational trier of fact may conclude beyond a reasonable doubt that Williams used force to trespass in their home on March 31, 2006. Any rational trier of fact could also conclude beyond a reasonable doubt that Williams intended to commit criminal offenses, namely, kidnapping and theft.
 {¶ 22} Williams' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
 "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 23} Williams argues that his convictions for kidnapping and theft are against the manifest weight of the evidence. We disagree.
 {¶ 24} According to the Ohio Supreme Court:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 25} Pursuant to the aforementioned case law, and in applying the facts on the record to R.C. 2905.01, we find that there exists substantial evidence for the trier of fact to find Williams guilty of kidnapping beyond a reasonable doubt.
 {¶ 26} Williams makes the argument that there is no evidence to show or prove that he committed kidnapping and theft. However, a thorough review of the trial *Page 9 
transcript reveals that the victim, Duke, testified in great detail regarding the offenses Williams committed on the night in question. Duke's neighbor was able to corroborate a portion of Duke's testimony. Officer Sawyer testified that when he arrested Williams two days later, he confiscated a small black firearm that may be the same firearm used against Duke. Testimony also included several positive identifications of Williams and Jermaine as the perpetrators in the instant case. Thus, in examining the entire record, in weighing all the evidence and all reasonable inferences and in considering the credibility of the witnesses, we find that the jury did not clearly lose its way and create a manifest miscarriage of justice.
 {¶ 27} Williams' second assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
 "The trial court erred when it sentenced the defendant-appellant to more than the minimum prison term in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions."
 {¶ 28} Williams argues, pro se, in his supplemental brief filed March 21, 2007, that the trial court erred in failing to sentence him to the minimum concurrent term. We disagree.
 {¶ 29} The trial court sentenced Williams to six years of imprisonment as follows: three years for all firearm specifications (merged for sentencing purposes) to be served prior and consecutive to the remaining sentence; three years for kidnapping and six months for misdemeanor theft, with the theft sentence to run concurrent to Williams' three-year sentence for kidnapping. *Page 10 
 {¶ 30} Pursuant to R.C. 2929.14, sentences for firearm specifications must be served prior and consecutive to any other imposed sentence. Therefore, the trial court did not err in sentencing Williams to three years of imprisonment to be served prior and consecutive to his sentences for kidnapping and theft.
 {¶ 31} Nor did the trial court err in sentencing Williams to concurrent terms of three years of imprisonment for kidnapping or six months of imprisonment for misdemeanor theft. The Ohio Supreme Court held:
 "[W]e have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences." State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 32} Because Williams' three-year sentence for kidnapping and his six-month sentence for misdemeanor theft are within the statutory range, the trial court did not err in imposing said sentences.
 {¶ 33} Williams argues that his sentence violates the ex post facto clause of Article I, Section 10 of the United States Constitution. The ex post facto clause prohibits, "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." State v. Mallette, Cuyahoga App. No. 87984,2007-Ohio-715. Also, Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from legislative encroachments." State v.Smith, 109 Ohio St.3d 285, 2006-Ohio-2419. "Although the federal and state constitutions prohibit ex post facto *Page 11 legislation, similar restrictions have been placed on judicial opinions." State v. McGhee, Shelby App. No. 07-06-05, 2006-Ohio-5162. (Emphasis in original.)
 {¶ 34} However, the holding in Foster does not violate federal or state ex post facto clauses. See McGhee; see Mallette. Nor does Williams' sentence violate federal or state ex post facto clauses. Williams committed his crimes on March 31, 2006. The Supreme Court of Ohio decided Foster on February 27, 2006, one month prior. BecauseFoster was decided prior to Williams committing his crimes, there was no change in the law that either increased his punishment or inflicted a greater punishment than the laws in existence when he committed his crimes on March 31, 2006. Therefore, Williams' sentence does not violate federal or state ex post facto clauses.
 {¶ 35} Williams' third assignment of error is overruled.
 {¶ 36} Lastly, we address Williams' sentence for the one-year firearm specification and the three-year firearm specification attached to his misdemeanor theft conviction. Although Williams did not raise this issue on appeal, we will consider this issue in the interest of justice and judicial economy, and because the sentence is contrary to law. See R.C.2953.08(A)(4).
 {¶ 37} The jury found that Williams had a firearm on or about his person or under his control while committing kidnapping and theft, in violation of R.C. 2941.141. The jury also found that Williams displayed, brandished, or indicated that he possessed the firearm, or used it to facilitate his offenses, kidnapping and theft, in *Page 12 
violation of R.C. 2941.145.
 {¶ 38} However, R.C. 2929.14(D)(1)(a) imposes sentences for firearm specifications only where the underlying offense is a felony. Thus, the trial court properly sentenced Williams to three years of imprisonment for the firearm specifications attached to his kidnapping charge. However, the trial court erred by improperly sentencing Williams to three years of imprisonment for the firearm specifications attached to Williams' misdemeanor theft conviction.
 {¶ 39} We vacate Williams' one-and three-year sentences for the firearm specifications attached to the misdemeanor theft. As the trial court merged all firearm specification sentences, our finding does not alter Williams' sentence. Williams will continue to serve his six years of imprisonment as otherwise imposed by the trial court.
Judgment of the trial court is affirmed in part and reversed in part.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
 COLLEEN CONWAY COONEY, P.J., and KENNETH A ROCCO, J., CONCUR. *Page 1